UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                       :

JAMES ROBERTS,                          :

                         :

             Plaintiff,          :          No. 20-CV-7522 (OTW)

                         :

            -against-          :

                         :          **OPINION & ORDER**

KILOLO KIJAKAZI,             :

Acting Commissioner of Social Security,[1]  :

                         :

            Defendant.      :

---------------------------------------------------------x

    **ONA T. WANG, United States Magistrate Judge:**

## I.    Introduction

Plaintiff James Roberts filed this action pursuant to Section 205(g) of the Social Security Act ("SSA") against the acting Commissioner of the Social Security Administration, seeking review of the Commissioner's denial of Plaintiff's application for disability insurance benefits. On January 8, 2018, Plaintiff had filed for such benefits under the SSA for a period beginning on June 13, 2017. (Administrative Record, dated February 25, 2021, ECF 15 hereinafter "R." at 58). After his application was denied, Plaintiff received a hearing on October 4, 2019 before Administrative Law Judge Paul W. Goodale and vocational expert Kenneth Smith. (R. 3–43).

ALJ Goodale subsequently issued a decision on October 29, 2019, finding that Plaintiff was not entitled to disability benefits because he was not disabled under the SSA. (R. 58–72).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted for former Commissioner Andrew Saul as the named defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

The Appeals Council affirmed this decision, rendering the Commissioner's denial final. (R. 44–

47). This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c). (ECF 10).

## II.    Factual History

Plaintiff, James Roberts, is a 54-year-old man who worked as a foreman and marble

setter for over thirty years at Port Morris Tile. (R. 18–19). On June 13, 2017, Plaintiff was injured

when a truck tailgate let loose, causing crate of marble to fall onto him. (R. 9–11, 61). Right

after the accident, Plaintiff was diagnosed with acute mildly displaced comminuted fractures of

the distal aspects of the left superior and inferior pubic rami extending to the pubic body, right

inferior pubic ramus fracture, nondisplaced right hemisacral fracture, nondisplaced right and

sixth rib fractures, nondisplaced left eighteen rib fracture which may be subacute, and open

tiny minimally displaced chip fracture of the posterior aspect of the left olecranon process.

(R. 273). At an occupational therapy evaluation two days after the incident, Plaintiff reported

four out of ten pain, and his range of motion, strength, and endurance were all within

functional limits. (R. 65). Plaintiff was able to ambulate a short distance and stand for

approximately 10 minutes. (R. 65). Plaintiff's sensation, posture alignment, muscle tone, motor

control, motor planning and gross motor coordination were intact. (R. 65–66).

In 2017 and 2018, Plaintiff saw a variety of doctors to treat his ailments. The parties

submitted a joint stipulation of facts detailing Plaintiff's medical history, the opinion evidence,

and the administrative hearing testimony, all of which I incorporate by reference. (ECF 24

("Stip.") 2–20 (citing the Administrative Record)).

### III.    Analysis

Plaintiff and the Commissioner filed respective motions for judgment on the pleadings.

Having reviewed the Record, the parties' briefs, and applicable law, the Commissioner's Motion

for Judgment on the Pleadings is **GRANTED**, and Plaintiff's Motion for Judgment on the

Pleadings is **DENIED**.

### A.   Applicable Legal Standard

A motion for judgment on the pleadings should be granted if the pleadings make clear

that the moving party is entitled to judgment as a matter of law. Additionally, the Court's

review of the Commissioner's decision is limited to an inquiry into whether there is substantial

evidence to support the Commissioner's findings and whether the correct legal standards were

applied. Substantial evidence is more than a mere scintilla. It only requires the existence of

"relevant evidence as a reasonable mind might accept as adequate to support a conclusion,"

even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Alston v. Sullivan*, 904 F.2d 122, 126

(2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Comm'r of Soc.*

*Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is

disabled but must rely on the underlying record.

To be awarded disability benefits, the SSA requires that one have the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The ALJ makes this determination through a five-step evaluation process, for which the burden

rests on the Plaintiff for the first four steps. Only after all four steps are satisfied does the

burden then shift to the Commissioner for the final step.

First, the ALJ must determine that Plaintiff is not currently engaged in substantial gainful

activity. Second, the ALJ must find that Plaintiff's impairment is so severe that it limits his ability

to perform basic work activities. Third, the ALJ must evaluate whether Plaintiff's impairment

falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 such that he

may be presumed to be disabled. Absent that, the ALJ must then determine the Plaintiff's

Residual Functional Capacity ("RFC"), or his ability to perform physical and mental work

activities on a sustained basis. Fourth, the ALJ then evaluates if Plaintiff's RFC allows him to

meet the physical and mental demands of his prior employment. If Plaintiff has satisfied all four

of these steps, the burden then shifts to the Commissioner to prove that based on Plaintiff's

RFC, age, education, and past work experience, that Plaintiff is capable of performing some

other work that exists in the national economy. 20 C.F.R § 416.920(a)(4)(i)–(v).

B.   The ALJ's Decision

Here, the ALJ applied this five-step process to Plaintiff's case. At step three, the ALJ

concluded that Plaintiff's impairments, either in isolation or in combination, did not fall under

any of the impairment listings of 20 CFR Part 404, Subpt. P, Appendix 1. Additionally, the ALJ

found that Plaintiff could perform light work, as defined in 20 CFR 404.1567(b), with the

following limitations: Plaintiff would need a sit-stand option by needing to sit for at least 10

minutes after 30 minutes of standing, but having no limitation on sitting. He can occasionally

stoop, crouch, crawl, and kneel. He can occasionally climb ramps and stairs, but cannot climb

ladders, ropes, or scaffolds. He must avoid concentrated exposure to fumes, odors, dust, gases,

and poorly ventilated areas. Finally, he could not do assembly-line type work, (*i.e.*, outwardly

paced, working in close tandem with coworkers), but could do individual table or bench work.

(R. 64). In making this decision, the ALJ referenced treatment notes of Douglas Schwartz, DO,

PC, the doctor who conducted Plaintiff's workers compensation evaluations; Dr. Mann, the

doctor who performed an October 2017 Independent Medical Examination ("IME"); Dr.

Figueroa, a "Consultative Examiner"; Dr. Saunders, a doctor who performed an October 2018

IME; Dr. Laico, a doctor who performed an IME in December 2018; and Dr. Murphy, a

"Consultative Examiner." (R. 66–69).

      C.   Analysis of ALJ's Decision

Plaintiff argues that Judge Goodale: (1) failed to properly evaluate Plaintiff's

impairments under Listing 1.04A; (2) did not apply the proper legal standard to determine

whether Plaintiff's (i) acute pancreatitis, (ii) left elbow pain, and (iii) right foot pain, constitute a

severe impairment; and (3) did not properly evaluate Plaintiff's efforts to obtain relief of pain

and other symptoms, as set forth in SSR 16-3p. (Stip. at 9–24). After having reviewed the ALJ's

decision, I find there is no basis for remand.

      *1.   The Impairments Do Not Meet or Equal Listing 1.04A.*

Listing 1.04A requires that the Plaintiff's condition presents: (1) evidence of nerve root

compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of

the spine; (3) motor loss (atrophy with associated muscle weakness) accompanied by sensory

or reflex loss; **and** (4) if there is involvement of the lower back, positive straight-leg raising tests

in both the seated and supine positions. *See Scully v. Berryhill*, 282 F. Supp. 3d 628, 635

(S.D.N.Y. 2017) (citing Listing 1.04A). It is well-settled that a Plaintiff must meet all of the

specified medical criteria to show that his impairment meets a Listing. "An impairment that

manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990). It is the Plaintiff's burden to "demonstrate that [his] disability

[meets] '*all* of the specified medical criteria' of a spinal disorder." *Otts v. Comm'r of Soc. Sec.*,

249 F. App'x 887, 888 (2d Cir. 2007) (quoting in part *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)

(emphasis in original)).

The ALJ concluded that Plaintiff did not satisfy the Listing 1.04A requirements because

there was neither evidence that Plaintiff "suffered motor loss or atrophy accompanied by

sensory or reflex [loss]" (1.04A(3)) nor "positive straight-leg raising both sitting and supine."

(1.04A(4)) (R. 64). Specifically, the ALJ noted that as early as June 15, 2017, Plaintiff's

"sensation," "muscle tone, motor control, motor planning[,] and gross motor coordination"

were all "intact," and that he was able to "maintain balance without difficulty." (R. 65–66 citing

Ex. 1F/5–6). The ALJ acknowledged that on July 20, 2017, Dr. Schwartz found that Plaintiff

demonstrated "some mild decreased sensation, muscle strength, and deep tendon reflex," but

noted that Dr. Laico's independent examination found "intact motor strength." (R. 66–67). The

ALJ also highlighted that by May 2018, Plaintiff had a normal gait, could walk on heels and toes

without difficulty, "squat full," had full range of motion of the elbows, and had no sensory

deficit. (R. 66–67, citing Ex. 7F (found at R. 768–69)).

Plaintiff argues that the Record "contains evidence of limited [range of motion] and

diminished motor strength accompanied by altered sensation in the L4 and 15 dermatomes and

abnormal reflexes in the lower extremities, as well as positive straight-leg raise." (Stip. at 10). In

support of this, Plaintiff cites reports that show muscle grade strength of 4-/5, and deep tendon

reflexes of 2/4 throughout bilateral lower extremities. *See e.g.* R. 351.

After reviewing the Record and the parties' submission, I agree with the ALJ's analysis

that Plaintiff did not have positive straight-leg raising tests sitting and supine, thereby failing to

satisfy Listing 1.04A.

#### i.    Motor Loss

Element three of Listing 1.04A requires evidence of "motor loss," which may be

demonstrated by either "atrophy with associated muscle weakness" or "muscle weakness"

"accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.04A.

Under 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(E)(1), significant motor loss may be shown by an

"[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position." This

Court has found that somewhat less-than-full motor strength at 4/5 is insufficient to satisfy

Listing 1.04A because motor strength was only slightly diminished. *See Killings v. Comm'r of Soc.*

*Sec.*, 2016 WL 4989943, at *11 (S.D.N.Y. Sept. 16, 2016) ("At its worst, the plaintiff's motor

strength was reported as 'slightly diminished' or rated at '4/5.' . . . Therefore, the ALJ's finding

that the plaintiff's spinal impairment did not meet Listing 1.04 is supported by substantial

evidence.") (*R&R adopted*, No. 15-CV-8092 (KBF), 2016 WL 6952342 (S.D.N.Y. Nov. 28,

2016)); *Delgado v. Comm'r of Soc. Sec.*, 2020 WL 957562, at *15 (S.D.N.Y. Jan. 21, 2020)

("Although Section 1.04 does not contain an express severity standard, it seems clear that

something more than a slight loss of function is required to satisfy its criteria.") (*R&R adopted*,

No. 18-CV-3960 (GBD) (DF), 2020 WL 953277 (S.D.N.Y. Feb. 27, 2020)). Notably, Plaintiff here is

at 4-/5. Because Plaintiff fails to satisfy the straight-leg raising tests in element 4, it is not

necessary for me to resolve whether 4-/5 would be sufficient to establish muscle weakness

under Listing 1.04A.

ii.    *Straight-Leg Raising Tests*

Even if Plaintiff did establish motor loss sufficient to meet element 3, Plaintiff still would

not satisfy Listing 1.04A because Plaintiff's did not have "positive straight-leg raising tests" **both**

**sitting and supine**.[2] The "positive straight-leg raising test" "is a fundamental neurological

maneuver during the physical examination of the patient with lower back pain aimed to assess

the sciatic compromise due to lumbosacral nerve root irritation." (Gaston O. Camino Willhuber

& Nicolas S. Piuzzi, *Straight Leg Raise Test*, NCBI (July 31, 2021),

https://www.ncbi.nlm.nih.gov/books/NBK539717/). The Record contains ten straight leg raising

tests following Plaintiff's alleged disability onset date of June 13, 2017. Of the eight tests that

are positive, seven exams were performed by Dr. Douglas A. Schwartz. (R. 351 (July 20, 2017),

R. 360 (November 10, 2017), R. 364 (December 8, 2017), R. 1064 (April 20, 2018), R. 1066

(September 14, 2018), R. 1068 (November 9, 2018), R. 1072 (February 1, 2019)). Defendant

argues that Dr. Schwartz's straight-leg raising tests show positive results for **only** the sitting

position.[3] (Joint Stip. 11). Plaintiff does not argue in response that these leg-raising tests show

positive results in sitting **and** supine positions. Dr. Rita Figueroa conducted an exam on May 3,

2018. (R. 768). She stated that Plaintiff's "SLR was positive, left leg 5 degrees, right leg 60

degrees. **It was only confirmed in the** left leg in the **sitting position**." (R. 768) (emphasis

---

[2] As discussed, this finding is required for Plaintiff to meet Listing 1.04A because his condition related to the lower back. *See supra* Section 3.C.1.

[3] All of Dr. Schwartz's treatment notes state: "Straight Leg Raise Supine & Bechterew/Straight Leg Raise Seated + 60 degrees left leg . . . ." (R. 380).

added). Dr. Ronald L. Mann conducted a straight leg test, dated October 16, 2017, which was

negative. (R. 1040). Dr. Joseph P. Laico conducted a straight-leg test, dated December 18, 2018,

and reported that "[s]traight leg raising was negative through 70 degrees." (R. 806).

Accordingly, Plaintiff fails to satisfy Listing 1.04A. *See Huseinovic v. Comm'r of Soc. Sec.*, No. 17-

CV-5466 (BMC), 2018 WL 3241317, at *2 (E.D.N.Y. July 3, 2018) ("The Listing requires positive

straight-leg raising tests in both positions."); *contra Ramirez Morales v. Berryhill*, No. 6:17-CV-

06836 (MAT), 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019) (remanding where the record

was silent as to whether the tests were performed in the sitting position, supine position, or

both).

#### 2.   The ALJ Properly Evaluated Plaintiff's Other Impairments.

At the second step of the sequential evaluation, Plaintiff had to show that he had an

impairment or combination of impairments that (1) was medically determinable, (2) was

severe, and (3) met the durational requirement. 20 CFR §§ 404.1509, 404.1520(a)(4)(ii),

404.1521, 404.1522; *Bowen v. Yuckert*, 482 US 137, 146, 153–54 (1987). To be severe, an

impairment must "significantly limit your physical or mental ability to do basic work activities,"

which are "the abilities and aptitudes necessary to do most jobs." 20 CFR § 404.1522. Here, the

ALJ's analysis is sound as to why Plaintiff's (i) acute pancreatitis (ii) left elbow injury (iii) right

foot injury are not severe.

#### i.   Plaintiff's Acute Pancreatitis Does Not Present a Severe Impairment.

Plaintiff's acute pancreatitis does not meet the severity requirements in 20 CFR §§

404.1508, 1520(c), and 1509. Plaintiff highlights that the July 23, 2018 CT scan shows

"thickening of the mesentery of the pancreas, which represents early pancreatitis without

evidence of collection ([R.] 1335)." (Stip. 13). Plaintiff also cites admissions to the hospital for

treatment of his pancreatitis on July 24, 2018 and March 21, 2019 as evidence of severity. (Stip.

13). Notably, Plaintiff did not mention issues with pancreas or related abdominal pain at the

time he alleged disability, or during the hearing. (R. 3–33, 231). When asked about his

pancreatitis, Plaintiff said he had curbed a drinking problem that he had, and has "been able to

cut back," reducing his intake from every day to "maybe two days a week." (R. 28–29).

Particularly where Plaintiff did not even cite pancreatitis or abdominal pain as an

interfering reason for returning to work, there is substantial evidence to support that Plaintiff's

pancreatitis does not preclude him from gainful activity. *Sellers v. Heckler*, 590 F. Supp. 1141,

1146 (S.D.N.Y. 1984) ("Plaintiff's failure to allege a mental impairment until after the hearing

casts further doubt on the existence of such a disability."). Even with the benefit of briefing,

Plaintiff fails to argue how his stable pancreatitis interferes with his ability to work. The ALJ

concluded that the condition was a non-severe impairment because it had been relatively

stable, has not worsened, and does not evidence significant symptomology resulting in

functional limitations. (R. 62). I agree with the ALJ.

ii.     Plaintiff's Left Elbow Injury Does Not Present a Severe Impairment.

The Record shows that in 2017 Plaintiff reported pain in his left elbow (R. 359), but

Plaintiff's elbow issues are resolved by 2018. The ALJ concluded that the left elbow fracture

failed to meet the durational requirement of 12 months to be classified as a severe impairment,

based on 20 CFR § 404.1509. (Stip. at 15). I agree.

On May 3, 2018, Dr. Rita Figueroa conducted an internal medicine evaluation. Dr.

Figueroa noted that "the left elbow [] healed," and Plaintiff did not report any elbow pain.

(R. 766). Similarly, Plaintiff did not mention any left elbow injury or pain as a reason why he was unable to work at the ALJ hearing. (R. 3–33, 231). In fact, Plaintiff explicitly denied any long-term impairment to his arms during the hearing. (R. 22).

Contrary to Dr. Figueroa's findings and Plaintiff's own testimony, Dr. Schwartz, based on an August 2018 MRI, found that there was "[l]eft elbow derangement with impressions mild chronic distal triceps tendinopathy; small elbow joint effusion." (R. 1065). The ALJ considered this opinion, but found it unpersuasive because it was inconsistent with the claimant's later testimony and with the evidence provided by other providers in the record, specifically (1) Dr. Richard Saunders, who concluded that the August 30, 2018 MRI showed "no evidence of acute ligament, tendon, or bony injury in the left elbow" (R. 799, Ex. 9F/2); and (2) Dr. Joseph Laico (orthopedic surgeon), who found "[e]xamination of the left elbow revealed the carrying angle to be normal. There was no swelling, deformity, discoloration or scarring in the elbow region." (R. 807 (on 12/18/2018) (Ex. 10F/7)).

### iii.   Plaintiff's Right Foot Injury Does Not Present a Severe Impairment.

Plaintiff argues that the ALJ should have found his right foot pain severe because he was diagnosed with right foot derangement following his accident (Stip. at 14, R. 350–51), but by May 2018, Plaintiff had a normal gait, could walk on heels and toes without difficulty, had full range of motion of the ankles, and had no sensory deficit or muscle atrophy. (R. 66–67, R. 768–69). As the Commissioner points out, any limitations possibly stemming from his right foot pain were addressed by the ALJ's RFC finding for light work with a sit-stand option after 30 minutes of standing. (R. 64). Although Dr. Schwartz noted that Plaintiff reported pain and that an August 30, 2018 MRI documented "diagnostic impressions" of "moderate osteoarthritic changes" in

the first MPT joint (the joint at the base of the big toe) with "large dorsal osteophytes" (bone spurs) and "fluid/synovitis" (a type of inflammation) and "chronic plantar fasciitis" (inflammation in the bottom of the heel) (R. 1065), the ALJ properly found this opinion unpersuasive because it was inconsistent with other medical opinions. (R. 68).

Accordingly, I conclude that these impairments do not individually, or in combination with each other, or Plaintiff's other impairments, meet or equal the criteria of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpt. P.

> 3. *The ALJ properly considered Plaintiff's efforts to obtain relief of pain and other symptoms, as set forth in SSR 16-3p.*

Plaintiff also argued that the ALJ failed to address his efforts to obtain relief of pain and other symptoms when determining Plaintiff's RFC. (Stip. at 16). Upon review, however, I find that the ALJ here holistically reviewed the different factors in relation to the medical record in accordance with Social Security Ruling ("SSR") 16-3p.

SSR 16-3p requires the ALJ to consider holistically different factors in a Plaintiff's case, including, for example, "objective medical evidence, Plaintiff's statements about the intensity, persistence, and limiting effects of [his] symptoms, and statements and information provided by the medical sources." *Kearney v. Berryhill*, No. 16-CV-00652 (MAT), 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (quoting *Vered v. Colvin*, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)). The ALJ here considered Plaintiff's ability to carry out daily activities (get dressed, make breakfast, and perform minor cleaning and yardwork), recent travel, and daily medications. (Stip. at 22, R. 65).

The district court's review of an ALJ's assessment regarding subjective complaints is "sharply limited." *Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017). "It is the function of the

12

[Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Sec'y Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982)). Plaintiff here relies heavily on his subjective complaints of pain and symptoms, but "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).

Here, the ALJ acknowledged that Plaintiff had residual symptoms from his work-related accident and limited him to a range of light work with a sit-stand option. (R. 64). Further, in response to hypothetical scenarios in which Plaintiff would work with limitations, Plaintiff appeared more concerned about how he would get to and from work *if he needed to take medication*, and not the level of pain he experiences in certain contexts or whether his medication would hinder his ability to do adequately perform at the hypothetical job. (R. 40–41). Accordingly, I find that the ALJ adequately considered Plaintiff's efforts to obtain relief of pain and other symptoms, as set forth in SSR 16-3p.

IV.     Conclusion

For the reasons stated above, the Commissioner's Motion for Judgment on the

Pleadings is **GRANTED**, and Plaintiff's Motion for Judgment on the Pleadings is **DENIED**.

**SO ORDERED.**

_s/  Ona T. Wang_

Dated: June 8, 2022                                                **Ona T. Wang**
    New York, New York                        United States Magistrate Judge